[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15777
Non-Argument Calendar
_____

Agency No. A206-650-937


MI JA CHO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(September 7, 2016)

Before TJOFLAT, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Mi Cho petitions for review of the Board of Immigration Appeals' ("BIA") final order affirming: (1) the Immigration Judge's ("IJ") denial of her application for withholding of removal; (2) the IJ's finding that she failed to request Convention Against Torture ("CAT") relief; and (3) the IJ's denial of her motion for continuance.  Cho argues first that substantial evidence does not support the BIA's decision denying her withholding of removal claim, which was based on her testimony regarding the domestic violence she suffered at the hands of her ex-husband.  The BIA affirmed the denial of the claim, determining that even assuming she suffered past persecution on account of a protected ground, the evidence of South Korea's advancements in addressing domestic violence rebutted the presumption that she would be likely to suffer persecution in the future.  Cho next argues that she established her eligibility for CAT relief and the BIA failed to give reasoned consideration to her CAT claim.  Finally, Cho contends that the BIA erred in affirming the IJ's denial of her motion for continuance because the IJ's denial of the motion was an abuse of discretion.

**I.**

We review the BIA's decision as the final judgment, unless the BIA expressly adopted the IJ's decision.  *Ruiz v. Gonzales*, 479 F.3d 762, 765 (11th Cir. 2007).  When the BIA explicitly agrees with the findings of the IJ, we will review

2

the decision of both the BIA and the IJ as to those issues. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 948 (11th Cir. 2010).

Factual determinations are reviewed under the substantial-evidence test, which requires "view[ing] the record evidence in the light most favorable to the agency's decision and draw[ing] all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (*en banc*). We must affirm the BIA's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 818 (11th Cir. 2004) (quotation omitted). "To reverse the . . . fact findings, we must find that the record not only supports reversal, but compels it." *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003).

To qualify for withholding of removal, an applicant must establish that if returned to her country, her life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. Immigration and Nationality Act ("INA") § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). The burden of proof is on the applicant. INA § 241(b)(3)(C), 8 U.S.C. § 1231(b)(3)(C). An alien may satisfy her burden of proof for withholding of removal in two ways. First, an alien may establish past persecution based on a protected ground. *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1375 (11th Cir. 2006). If

3

the applicant establishes past persecution based, at least in part, on an enumerated ground, it is presumed that her life or freedom would be threatened upon return to that country, unless the government shows by a preponderance of the evidence that (1) the country's conditions have changed such that the applicant's life or freedom no longer would be threatened; or (2) it would be reasonable for the applicant to relocate to another part of the country to avoid persecution.  *Id.*  Second, an alien may establish that it is more likely than not that she will be persecuted upon removal based on a protected ground.  *Id.*

Because the BIA issued its own opinion in this case, we review the BIA's opinion.  *Ruiz*, 479 F.3d at 765.  Substantial evidence supports the BIA's conclusion that, even assuming Cho suffered past persecution, any presumption of future persecution was rebutted by South Korea's advancements in addressing domestic violence.  In 2004, when Cho last resided in South Korea, reports showed that 44.6% of married South Korean households experienced some form of domestic violence, with 15.7% experiencing physical domestic violence, but only 11.8% of women reported their domestic violence incident to police.  Domestic violence victims also reported that South Korean authorities were often negligent in confronting domestic violence incidents, would simply release domestic violence suspects once they arrived at the police station, and sometimes humiliated and bullied victims instead of offering help.  Police negligence, according to one

report, stemmed from the sexist view of police in the early stages of two statutes addressing domestic violence, which were enacted in 1997. Further, in 2004, the recognition of South Korea's "1366" emergency centers, which provided counseling and other emergency services to women who were victims of all types of violence, was low, with only 32.8% of females and 31% of males affirming knowledge of those services.

However, in 2013, South Korea instituted its "three strikes" policy regarding domestic violence offenders, which authorized authorities to immediately detain a domestic violence suspect, regardless of the victim's wishes, if the suspect had two priors for domestic violence offenses within the previous three years. In 2007, the South Korean government instituted mandatory domestic violence curriculum in schools and revised and reinforced punishments for domestic violence offenders. South Korea has also continued to fund and publicize its "1366" support centers, which provided domestic violence resources to approximately 160,000 victims every year. Moreover, although police negligence was cited as a serious impediment to domestic violence investigations in 2004, the 2013 Human Rights Report for South Korea from the U.S. State Department observed that South Korean police were, for the most part, generally responsive to domestic violence incidents. Since 2009, the South Korean government has provided over 50 group homes for domestic violence victims, as part of its Housing Provision Project,

5

which also offered follow-up counseling and continued access to domestic violence resources to group home residents.  Moreover, new domestic violence regulations were introduced in 2013, mandating that domestic violence suspects seek counseling, even if the suspects were not actually convicted of a domestic violence offense.  These new 2013 regulations also allowed authorities to arrest suspects on suspicion of domestic violence if the suspect had a previous domestic violence conviction and a lethal weapon or dangerous instrument was found on his person.

Based on the foregoing, there is substantial evidence supporting the BIA's conclusion that South Korea has undergone a fundamental change concerning its treatment of domestic violence sufficient to rebut any presumption that Cho would more likely than not be persecuted on account of her membership in her particular social group if she returned to South Korea.

## II.

We "may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as a matter of right."  INA § 242(d)(1), 8 U.S.C. § 1252(d)(1).  This exhaustion requirement is jurisdictional and precludes review of a claim not presented before the BIA.  *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1249-50 (11th Cir. 2006).

6

To satisfy the exhaustion requirement, a petitioner "must have previously argued" to the BIA "the 'core issue now on appeal.'" *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1297 (11th Cir. 2015). Although "precise legal terminology" and "well-developed argument[s]" are not required, "[u]nadorned, conclusory statements" do not suffice. *Id.* The petitioner must provide the BIA with the relevant factual underpinnings of her argument for relief, unless she is raising a pure question of law. *Id.* at 1298.

A petitioner's argument that the BIA has failed to give reasoned consideration to her claims, arguments, or evidence does not need to be exhausted, for such a claim does not arise until the BIA issues its decision in the petitioner's case. *Id.* at 1299. Consequently, it would be "nonsensical" to require the petitioner to raise an argument about a decision that is not yet in existence. *Id.*

We review *de novo* a contention that the BIA failed to give reasoned consideration to an issue. *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016). To determine whether the BIA gave reasoned consideration to a petition, we ask only whether the BIA "consider[ed] the issues raised and announce[d] [its] decision in terms sufficient to enable a reviewing court to perceive that [it] ha[s] heard and thought and not merely reacted." *Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1232 (11th Cir. 2013) (quoting *Cole v. U.S. Att'y Gen.*, 712 F.3d 517, 534 (11th Cir. 2013)). Although the BIA must consider all the relevant

evidence, the BIA "need not address specifically each claim the petitioner made or each piece of evidence the petitioner presented." *Id.* (quotation omitted).

We lack jurisdiction to consider Cho's arguments that she is eligible for CAT relief because she did not exhaust that claim. Before the IJ, Cho expressly stated that she was raising only a withholding of removal claim, and her notice of appeal and brief to the BIA contained no substantive arguments regarding a CAT claim. Therefore, the petition for review is dismissed for lack of jurisdiction as to Cho's claims that she is eligible for CAT relief. *Amaya-Artunduagua*, 463 F.3d at 1249-50; *Indrawati*, 779 F.3d at 1297.

We retain jurisdiction over Cho's argument that the BIA failed to give reasoned consideration to her CAT claim. *Indrawati*, 779 F.3d at 1299. It fails on the merits though. The BIA did not fail to give reasoned consideration to Cho's CAT claim because Cho did not present a CAT claim before the BIA. *Perez-Guerrero*, 717 F.3d 1232.

## III.

We review an IJ's denial of a motion for abuse of discretion. *Zafar v. U.S. Attorney Gen.*, 461 F.3d 1357, 1362 (11th Cir. 2006). "Judicial review of discretionary relief incident to deportation proceedings . . . is limited to determining 'whether there has been an exercise of administrative discretion and

whether the matter of exercise has been arbitrary or capricious.'" *Garcia-Mir v. Smith*, 766 F.2d 1478, 1490 (11th Cir. 1985) (citations omitted).

"The Immigration Judge may grant a motion for continuance for good cause shown." 8 C.F.R. § 1003.29. According to BIA precedent, "an immigration judge's decision denying [a] motion for continuance will not be reversed unless the alien establishes that [the] denial caused him actual prejudice and harm and materially affected the outcome of his case." *Matter of Sibrun*, 18 I.&N. Dec. 354, 356-57 (BIA 1983); *see Cole*, 712 F.3d at 534-35 (requiring petitioner, who argued the IJ's denial of a continuance deprived him of due process, to show that the denial resulted in "substantial prejudice," meaning that the outcome would have been different if the motion had been granted, and denying the claim because the documents petitioner sought time to obtain would not have called the IJ's factual findings into question).

The IJ did not abuse his discretion in denying Cho's motion for continuance, and thus the BIA did not err in affirming the IJ's denial, because Cho failed to show good cause. First, although Cho's continuance motion stated she needed more time to obtain supplementary documents, Cho did not state in her continuance motion, in her brief to the BIA, or in her arguments to us, what documents she sought or how they would have bolstered her withholding of removal claim. Nor did she proffer what documents she sought after the IJ

9

expressly invited her to do so.  Further, Cho had been in the United States for almost ten years and had two months after being placed into immigration proceedings to prepare any applications for relief.  Finally, Cho has failed to show how the IJ's decision prejudiced her claims or establish how the outcome of her case would have been different had her motion for continuance been granted. *Matter of Sibrun*, 18 I.&N. Dec. at 356-57; *see also Cole*, 712 F.3d at 534-35. Therefore, Cho has not demonstrated that the IJ abused his discretion in denying her motion for continuance.

**PETITION DENIED IN PART, DISMISSED IN PART.**